UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————X

DANIEL PRESCOTT,

        Plaintiff,

  - against -

RIKER ISLAND MED. STAF.; GEORGE
THOMPSON, P.A., JEORGE
VILLALOBOS, P.A.; LYNN DEVIVO, P.A.;
OFFICER GRANT #1213; N.Y.C.
MUNICIPALITY,

        Defendants.

———————————————————X

**OPINION AND ORDER**

**09 Civ. 255 (SAS)**



SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Daniel Prescott, presently incarcerated and proceeding *pro se*, brings

this action pursuant to section 1983 of Title 42 of the United States Code ("section

1983").  Defendants include Rikers Island Medical Staff ("Staff")[1], the City of

New York ("the City"), Officer Shawn Grant, and Physician Assistants George

---

[1]    While plaintiff includes the Rikers Island Medical Staff in the caption,
he does not list them as parties in the Complaint.  The Staff is not a distinct entity
or "person".  Thus, naming Staff as a defendant is redundant, as the individual staff
members are already being sued.  The claim against Rikers Island Medical Staff is
therefore dismissed.

Thompson, Jorge Villalobos, and Lynn Devivo.   Prescott's Amended Complaint

("Complaint") alleges, *inter alia*, the excessive use of force by a prison officer

while transporting Prescott from Elmhurst Hospital ("Hospital") to the prison at

Rikers Island ("Rikers Island").   For this alleged Eighth Amendment violation,

plaintiff seeks damages in the amount of one million dollars.

Defendants now move for summary judgment pursuant to Rule 56 of

the Federal Rule of Civil Procedure on the following grounds: (1) plaintiff fails to

state a plausible excessive force claim; (2) plaintiff fails to allege personal

involvement by Thompson, Villalobos and Devivo; and (3) plaintiff's *Monell*

claim against the City fails because of a lack of a custom or policy.   For the reasons

stated below, defendants' motion for summary judgment is granted and this case is

dismissed.

## II.    BACKGROUND

### A.    Procedural History

Plaintiff filed his original Complaint on May 30, 2008.   On January

12, 2009, the Court issued a Sixty (60) Day Order directing plaintiff to submit an

Amended Complaint if he wished to proceed on his claims.   Plaintiff filed an

Amended Complaint on February 9, 2009.   In the Complaint, plaintiff alleges the

following civil rights claims pursuant to section 1983: (1) deliberate indifference to

-2-

his medical needs; and (2) excessive use of force by a prison officer.  On November 1, 2010, this Court So-Ordered a stipulation wherein plaintiff agreed to withdraw his deliberate indifference claim.[2]  Therefore, the instant motion pertains only to plaintiff's excessive force claim.

### B.    Factual History

Between June 3, 2006 and May 1, 2009, plaintiff was incarcerated at Rikers Island.[3]  In 2006, Prescott suffered a back injury in a slip and fall.[4]  The prison medical records show that plaintiff had continued complaints of back pain following this incident.[5]  An X-ray was ordered on January 29, 2008 after Prescott complained of back pain.  The X-ray, taken on February 5, 2008,[6] showed only a

---

[2]     See Stipulation, dated November 1, 2009, Ex. B to Defendants' Memorandum in Support of Defendants' Motion for Summary Judgment ("Def. Mem").

[3]     In May 2009, Prescott was transferred to Mt. McGregor Correctional Facility.  The facts relating to the instant case occurred in 2008, while Prescott was incarcerated at Rikers Island.

[4]     See 10/13/10 Deposition of Daniel Prescott ("Prescott Dep."), Ex. E to Def. Mem., at 28.

[5]     See Prescott's Prison Medical History ("Medical History"), Ex. D to Def. Mem., at 1-41, 48, 1143, 1146, 1154, 1589-90.

[6]     See id. at 1590.  While the Clinic ordered the X-ray before Prescott's January 30, 2008 slip and fall, it was taken five days after he returned from the Hospital.

"mild disc space narrowing" and "no compression fracture".[7]   On January 30, 2008, Prescott slipped and fell on a wet spot on the floor in his prison block.[8] After complaining of neck and back pain, Prescott was taken to the George Motchan Detention Center Clinic ("Clinic").  He was examined, given pain medication, and released back to the prison.[9]  The following day, Prescott was unable to move. He was then taken to the Hospital on January 31, 2008, where a series of examinations were performed, including a CT Scan and X-rays of his back and neck.  Plaintiff was also prescribed Percocet for the pain.[10]

Prescott was discharged from the Hospital on January 31, 2008.  The Hospital's Medical Chart showed that Prescott's condition had improved, and that the X-rays and CT scans were negative.[11]  In preparing to escort him back to Rikers Island, Prescott alleges that Grant "aggressively shackled me on my hands feet and my back further agitating all of my injuries."[12]  Additionally, Prescott

---

[7]     *Id.* at 1589.

[8]     *See* 2/2/08 Grievance dated February 2, 2008 ("Grievance"), attached to the Amended Complaint.

[9]     *See id.*

[10]    *See id.*

[11]    *See* Elmhurst Hospital 1/31/08 Medical Chart ("Medical Chart"), dated January 31, 2008, Ex. F to Def. Mem.

[12]    Grievance.

alleges that Grant forcefully pushed and shoved him in his back and neck, after being informed by an officer on duty (Officer Cudjoe) that Prescott had just been seen by a doctor for injuries to these areas.[13]  Prescott further alleges that while being shoved, Grant said "fuck you M.O."[14]   According to Prescott, "M.O." is a derogatory term used by prison officers to describe inmates who have received mental health care.[15]  Prescott also alleges that during the ambulance ride back to Rikers Island, Grant continued to make derogatory comments.[16]

Upon returning to Rikers Island, Prescott was sent to the Clinic for a follow-up visit.  The physician's assistant noted that plaintiff was not in acute distress, but continued his prescriptions for Naprosyn and Robaxin.[17]  On February 2, 2008, plaintiff complained of lower back pain, but made no reference to excessive force.  Prescott again complained of lower back pain on February 4, 2008, but again failed to complain of any excessive force.   However, Prescott contacted Grievance Officer Pauline Mimms on February 4, 2008, to report that he

---

[13]     *See id.*

[14]     *See id.*

[15]     *See* Defendants' Notice of Motion at ¶ 30. *See also* Prescott Dep. at 90.

[16]     *See id.*

[17]     *See* Medical History at 1546.

was subjected to excessive use of force on January 31, 2011 while he was at the Hospital.  Prescott complained that Grant pushed and shoved him, causing him neck and back pain.

On February 4, 2008, the Inmate Grievance Resolution Committee ("IGRC") received Prescott's February 2, 2008 complaint regarding the alleged excessive force incident.[18]   The IGRC responded on February 7, 2008, finding that the complaint was non-grievable because the matter pertained to an alleged assault and that it was beyond the purview of the IGRC to censor, discipline or remove the staff person in question.[19]

Following the IGRC's response, the grievance was investigated by the Department of Corrections.  On February 11, 2008, Prescott was examined as part of an Injury to Inmate Report.[20]   The Injury Report stated that there were no visible injuries and no treatment was prescribed.[21]   Officers Grant and Cudjoe both submitted written statements as part of the investigation.[22]  Each, using almost

---

[18]     *See* Grievance.

[19]     *See* 2/7/08 Inmate Grievance Resolution Committee Response ("IGRC Response"), attached to the Amended Complaint.

[20]     *See* 2/11/08 Injury to Inmate Report ("Injury Report"), Ex. G to Def. Mem., at 26.

[21]     *See id.*

[22]     *See id.* at 15-18.

identical language, stated that he had escorted Prescott to the Hospital and at no point had they seen or used excessive force against Prescott.[23]  On March 3, 2008, Grant submitted an additional affidavit, stating that Prescott had been shackled for the duration of the Hospital visit, except for a brief period when he was receiving an X-Ray.[24]

Grant is the only named officer directly involved in the alleged assault.   Grant's Employee Performance Service Report (the "EPS Report") includes no inmate complaints against him since his appointment in August 2004.[25] The EPS Report, dated July 22, 2009, lists no command disciplines or corrective interviews other than two failures to sign in/out in the twelve-month period prior to its issuance.[26]

On February 11, 2008, the Investigating Supervisor's Report returned a finding that the claim was unfounded, stating that "there is no supporting evidence to substantiate [the] allegation."[27]  Additionally, the investigation

---

[23]      *See id.*

[24]      *See id.* at 19.

[25]      *See* 7/22/09 Officer Grant's Employee Performance Service Report ("Grant's Performance Report"), Ex. H to Def. Mem.

[26]      *See id.*  There is no information on whether Grant was subject to command disciplines or corrective interviews prior to July 22, 2008.

[27]      2/11/09 Investigating Supervisor's Report, Ex. G to Def. Mem., at 14.

reported that there were no witnesses to the alleged incident, that the medical examination conducted after the grievance was filed showed no injuries, and that Prescott failed to explain why he did not immediately report the alleged attack.[28] This finding was upheld in the Tour Commander's Report, which stated "this allegation is unsubstantiated, as there is no documentary or medical evidence to support inmate Prescott's claim that he was assaulted by uniform staff."[29]  On March 4, 2008, the Deputy Warden and the Warden both concurred with the Tour Commander's findings.[30]  The initial Complaint in the instant action was filed on May 30, 2008.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment a s a matter of law."[31]  "'An issue of fact is

---

[28]     *See id.*

[29]     2/25/08 Tour Commander's Report, Ex. G to Def. Mem., at 11.

[30]     3/4/08 Department of Corrections Memoranda, Ex. G to Def. Mem., at 10.

[31]     Fed. R. Civ. P. 56(c)(2).

genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[32] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[33]

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[34] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[35] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[36] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be

---

[32] *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[33] *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[34] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[35] *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[36] *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[37]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[38]  However, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"[39]  "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[40]

Further, where the plaintiff is proceeding pro se, his or her pleadings must be considered under a more lenient standard than that accorded to "formal

---

[37]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

[38]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[39]     *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[40]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson*, 477 U.S. at 249.

pleadings drafted by lawyers,"[41] and his or her pleadings must be "interpret[ed] ... to raise the strongest arguments they suggest."[42]   However, a *pro se* plaintiff must still meet the usual requirements of summary judgment .[43]   Thus, a *pro se* plaintiff's "failure to allege either specific facts or particular laws that have been violated renders [his or] her attempt to oppose defendants' motion [for summary judgment] ineffectual."[44]

## B.   Section 1983

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction  thereof  to  the deprivation of any rights, privileges, or immunities secured by the Constitution and

---

[41]     *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) ("Because [plaintiff] is a *pro se* litigant, we read his supporting papers liberally.").

[42]     *Burgos*, 14 F.3d at 790.

[43]     *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4470, 2004 WL 2008848, at *4 (S.D.N.Y. Sept. 8, 2004) ("'Proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment.'") (quoting *Cole v. Artuz*, No. 93 Civ. 5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)).

[44]     *Kadosh v. TRW*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress . . .[45]

Section 1983 "does not create a federal right or benefit; it simply provides a
mechanism for enforcing a right or benefit established elsewhere."[46] "The purpose
of [section]1983 is to deter state actors from using the badge of their authority to
deprive individuals of their federally guaranteed rights and to provide relief to
victims if such deterrence fails."[47]

Imposition of liability under section 1983 requires a defendant's
direct involvement in the alleged constitutional violation.[48] "Thus, [a] supervisory
official cannot be liable solely on account of the acts or omissions of his or her

---

[45]    42 U.S.C. § 1983.

[46]    *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423
F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816
(1985)). *Accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot
go into court and claim a 'violation of § 1983' – for § 1983 by itself does not
protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights
Org.*, 441 U.S. 600, 617 (1979)).

[47]    *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[48]    *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well
settled in this Circuit that 'personal involvement of defendants in alleged
constitutional deprivations is a prerequisite to an award of damages under
§1983.'") (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.
1991)).

-12-

subordinates."[49] In 1995, the Second Circuit held that the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicated that unconstitutional acts were occurring.[50] However, in 2009, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own

---

[49]     *Bellamy v. Mount Vernon Hosp.,* No. 07 Civ. 1801, 2009 WL 1835939, at *4 (S.D.N.Y. June 26, 2009).

[50]     *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

individual actions, has violated the Constitution."[51]  "Accordingly only the first

and third *Colon* factors have survived the Supreme Court's decision in *Iqbal*."[52]

       For a person deprived of a constitutional right to have recourse against

a municipality under section 1983, he or she must show harm that results from an

identified municipal "policy," "custom," or "practice."[53]  In other words, a

municipality may not be found liable simply because one of its employees or

agents is guilty of some wrongdoing.[54]  Moreover, a policy, custom, or practice

cannot arise from a single instance of unconstitutional conduct by an employee of

the municipality.[55]  The Supreme Court has emphasized that

---

[51]    *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009) (citations omitted) (explicitly rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution").

[52]    *Spear v. Hugles*, No. 08 Civ. 4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009).

[53]    *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

[54]    *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 402 (1997).

[55]    *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831(1985) (Brennan, J., concurring in part and concurring in the judgment) (stating that "[t]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in Monell.").

> [i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.[56]

In the absence of an established written municipal policy, a plaintiff must prove that a municipal practice was so "'persistent or widespread' as to constitute 'a custom or usage with the force of law,'"[57] or that a practice or custom of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials."[58]

## C.  Excessive Use of Force

In order for an inmate to prove an Eighth Amendment excessive force claim against a corrections officer, the plaintiff must demonstrate the existence of "two components - one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's

---

[56]  *Brown*, 520 U.S. at 404.

[57]  *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)).

[58]  *Id.* (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

effect."[59]   Where an inmate  challenges a deliberate use of force as excessive

and unjustified, the primary source of substantive protection is the Eighth

Amendment.[60]  To establish an Eighth Amendment violation,

> an inmate must meet both an objective and a subjective
> requirement. To meet the objective requirement, the alleged
> violation must be sufficiently serious by objective standards .
> . . The objective component is context specific, turning upon
> contemporary standards of decency . . . To meet the subjective
> requirement, the inmate must show that the prison officials
> involved had a wanton state of mind when they were engaging
> in the alleged misconduct.[61]

To satisfy the subjective prong of an Eighth Amendment excessive force

claim,

> [t]he trier of fact should consider the following factors: the
> extent of the plaintiff's injuries, the need for the application
> of force, the correlation between the need for force and the
> amount of force used, the threat reasonably perceived by

------

[59]    *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).  *Accord Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (stating that in considering prisoners' Eighth Amendment excessive force claims, courts must inquire into both the subjective states of mind of the prison officials and the objective seriousness of the alleged harm).

[60]    *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).

[61]    *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quotation marks and citations omitted). *Accord Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (stating that in considering prisoners' Eighth Amendment excessive force claims, courts must inquire into both the subjective states of mind of the prison officials and the objective seriousness of the alleged harm).

-16-

the defendants, and any efforts made by the defendants to temper the severity of the forceful response.[62]

Significant injury is not required for a valid section 1983 claim.[63]  Nevertheless, the Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided the use of force is not repugnant to the conscience of mankind."[64]  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."[65]

## IV.   DISCUSSION

Defendants argue that Prescott offers no evidence other than his own assertions to prove that he was the victim of excessive force.  Instead, defendants contend that the evidence clearly shows that Prescott's injuries were due to his pre-existing back condition.  Defendants argue that any force used by Grant was *de minimis*, that the remaining individual defendants

---

[62]     *Brown v. Busch*, 954 F. Supp. 588, 594 (W.D.N.Y. 1997) (citing *Whitley*, 475 U.S. at 321).

[63]     *See Hudson*, 503 U.S. at 9.

[64]     *Id.* at 9-10.  *Accord Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) ("a de minimis use of force will rarely suffice to state a constitutional claim"); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

[65]     *Sims*, 230 F.3d at 22 (citations omitted).

were not personally involved, and that the plaintiff has not met the *Monell* standard required to state a claim against the City of New York.

### A.      Officer Grant

Plaintiff contends that Grant used excessive force when moving him from the Hospital to Rikers Island after he was made aware of Prescott's injuries.  In doing so, Grant allegedly violated plaintiff's Constitutional rights under the Eighth Amendment.  Defendants argue that there is no medical evidence that can substantiate plaintiff's claim and that any alleged injuries resulting from Grant's actions were *de minimis*.

#### 1.      Subjective Prong

Defendants maintain that a full body restraint may be used when transporting inmates outside of the prison.  However, officers are not *required* to use full body restraints on prisoners.[66]  Prescott testified that he asked Grant not to place full body restraints on him because of his back.[67]  Thus, Grant had the discretion to use a different means of restraint that would not irritate Prescott's back injury.  The decision by Grant to use the full body restraints could be seen as a conscious disregard for Prescott's back injury.

---

[66]     *See* 7 NYCRR § 250.2, General Policies on Discipline of Inmates, Ex. I to Def. Mem.

[67]     *See* Prescott Dep. at 85.

-18-

Further, defendants offer no evidence that Grant perceived a threat from Prescott or that Prescott was disobeying a direct order. Had Grant been making a good-faith effort to maintain or restore discipline, then force may have been necessary.[68] As it stands, there is no evidence in the record indicating that Prescott was resisting Grant, or otherwise causing a disturbance at the Hospital.

Additionally, the incident took place at a hospital, which suggests that Grant should have been aware that Prescott was not in good health. Forceful shackling, pushes and shoves are more likely to be considered wanton or malicious in a hospital setting. In sum, given the discretion to use less than full body restraints while transporting prisoners, Prescott's lack of resistance, and Grant's knowledge that Prescott had just received medical treatment, Prescott has offered sufficient proof to meet the subjective prong of an excessive force claim.

## 2.   Objective Prong

Prescott must also establish the objective prong, showing that the harm alleged was sufficiently and objectively serious.[69] Prescott does not offer any evidence that the shove, push, or shackling exacerbated his pre-existing back injuries. Further, in the days following the incident, he did not mention Grant's

---

[68]    *See Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 54 (E.D.N.Y. 2010). *See also Wright*, 554 F.3d at 268.

[69]    *See Crippen*, 193 F.3d at 91.

alleged excessive force when receiving medical attention for the slip and fall.

Additionally, when Prescott was examined, after the incident, in the Clinic, he

required no additional pain medication other than what was prescribed at the

Hospital.  At most, Grant's physical acts may have caused some aggravation to

Prescott's pre-existing injuries, which does not give rise to a constitutional

violation.[70]  "While recovery for aggravation of a pre-existing condition is not

precluded in such a case, recovery remains available only for injuries caused by the

use of excessive force."[71]   Given that Prescott was at the Hospital for pre-existing

injuries, it would be difficult, if not impossible, for plaintiff to prove causation as a

result of Grant's actions.  Additionally, Prescott showed no signs of injury when

examined at the Clinic after he reported his grievance.   Prescott cannot meet the

required objective prong, as any injury from the alleged assault was *de minimis*.[72]

Therefore, Grant's motion to dismiss Prescott's Eighth Amendment claim is

granted.

---

[70]     *See Busch*, 954 F. Supp. at 596 (where the court found only *de minimus* force by an officer who shoved, pushed and forcefully returned an inmate to his cell, which aggravated his long history of back problems).

[71]     *Id.* at 595.

[72]     *See Sprau v. Coughlin*, 997 F. Supp. 134, 137 (S.D.N.Y. 1995); *see also Perry v. Stephens*, 659 F. Supp. 2d 577 (S.D.N.Y. 2009).

**B.     Neither Thompson, Villalobos nor Devivo Were Personally Involved**

Thompson, Villalobos and Devivo argue that summary judgment must be granted in their favor based on their lack of personal involvement. Indeed, Prescott does not mention any of these individuals in his Amended Complaint or in his opposition papers to the instant motion. In fact, Prescott testified that only Grant was present when the alleged excessive force incident took place. Because Prescott fails to offer any evidence that Thompson, Villalobos or Devivo had any involvement in the alleged use of excessive force, his claim is conclusory. Accordingly, there is no genuine dispute as to any material fact with regard to these defendants. Thompson's, Villilobos's and Devivo's motion for summary judgment is granted.

**C.     The City of New York**

The City moves to dismiss plaintiff's *Monell* claim based on the absence of proof of an unconstitutional policy or practice. For the same reasons set forth in the dismissal of the original Complaint, Prescott fails to state a claim against the City. Prescott has not alleged the existence of an officially adopted custom or policy that caused him injury, nor has he alleged a causal connection

-21-

between that policy or custom and the violation of a constitutional right.[73]   Thus,

the City's motion for summary judgment is granted.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment

is granted.  The Clerk of the Court is directed to close this motion (Docket No. 34)

and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
April 12, 2011

---

[73]      In the Sixty-Day Order ("Order"), Judge Harold Baer wrote "Even
when liberally construed under *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per
curiam), the present complaint cannot be interpreted as alleging facts sufficient to
demonstrate that plaintiff's injury was caused by a policy or custom of the
municipal defendants.  The claims against the City of New York . . . are therefore
dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii)."  Order at 3.

-22-

## - Appearances -

**Plaintiff (Pro Se):**

Daniel Prescott
09-A-2288
Mt. McGregor Correctional Facility
1000 Mt. McGregor Road
Wilton, NY 12831

**For Defendants:**

Laura Anne Delvecchio, Esq.
Ana Maria Vizzo, Esq.
Heidell, Pittoni, Murphy & Bach, LLP
99 Park Avenue
New York, NY 10016
(212) 286-8585
(212) 471-4661